STATE *vs.* WM. H. McMILLAN.

October Term, 1896.

Present: Ross, C. J., Taft, Rowell, Tyler, Munson, Start and Thompson, JJ.

*Construction of Statute—Bucket-Shop—Indictment Insufficient.*

V. S. 5128, 5130, were originally passed as parts of an act the declared intention of which was to suppress the business conducted in bucket-

shops, and this intention is to be considered in construing the sections as they now stand without that declaration of intention.

Hence an indictment under V. S. 5128, charging the respondent with keeping a bucket-shop wherein the prohibited business was conducted and permitted, is insufficient if it fails to allege directly that such business was conducted or permitted by the respondent.

V. S. 5130 does not create a substantive offense independent of that created by 5128, but creates one that is accessory thereto, and the prohibited acts, to be criminal, must be done with a view to the transactions mentioned in 5128.    Consequently an indictment which fails to allege that the acts complained of were so done is insufficient.

INDICTMENT in two counts under V. S. 5128 and 5130 respectively, to which the respondent demurred.    At the June Term, 1896, Caledonia County, *Ross*, C. J., presiding, there was a *pro forma* judgment overruling the demurrer and holding the indictment sufficient.    The respondent excepted, and the cause was passed to this court before final judgment as provided by V. S. 1629.

The indictment, omitting the formal introduction, was as follows: That, William H. McMillan of St. Johnsbury in the County of Caledonia, on the first day of June, A. D. 1896, and at divers other times and days both before and since said first day of June, at St. Johnsbury in the County of Caledonia aforesaid, did keep and cause to be kept, and did aid, abet and assist divers other persons to keep and cause to be kept, a bucket-shop, to wit: an office, in which said bucket-shop, to wit: said office, was then and there conducted and permitted the pretended buying and selling of stocks and bonds of divers corporations and the pretended buying and selling of petroleum, cotton, grain, provisions, pork and other produce, on margins and otherwise, there being then and there no intention of receiving and paying for such stocks and bonds and such petroleum, cotton, grain, provisions, pork and other produce, so bought by divers persons to your Grand Jurors unknown, and with then and there no intention of delivering such stocks and bonds and such petroleum, cotton, grain, provisions, pork and other produce, so sold by divers other persons to your

Grand Jurors unknown; and  *  *  *  *  did then and there keep and cause to be kept and did then and there aid, abet and assist divers other persons to your Grand Jurors unknown to keep and cause to be kept, a bucket-shop, to wit: an office, in which bucket-shop, to wit: said office, was then and there conducted and permitted the pretended buying and selling of such stocks and bonds of divers corporations and the pretended buying and selling of such petroleum, cotton, grain, provisions, pork and other produce, on margins; and  *  *  *  *  did then and there keep and cause to be kept, and did then and there aid, abet and assist divers other persons, to your Grand Jurors unknown, in keeping and causing to be kept, a bucket-shop, to wit: an office, in which said bucket shop, to wit; said office was then and there conducted and permitted the pretended buying and selling of such stocks and bonds of. divers corporations and the pretended buying and selling of such petroleum, cotton, grain, provisions, pork and other produce, that is to say that he, the said William H. McMillan, did then and there keep and cause to be kept and did aid, abet and assist divers other persons to your Grand Jurors unknown, in keeping and causing to be kept, such bucket-shop, to wit: such office, in which bucket-shop, to wit: such office was then and there conducted and permitted the buying and selling of such stocks and bonds and such petroleum, cotton, grain, provisions, pork and other produce, when the party buying such stocks and bonds and such petroleum, cotton, grain, provisions and other produce then and there did not intend actually to receive the same if purchased and where the party selling such stocks and bonds and such petroleum, cotton, grain, provisions, pork and other produce then and there did not actually intend to deliver the same if sold, contrary, etc.

And the Grand Jurors aforesaid, etc., that the said William H. McMillan, on, etc., and at divers other times at, etc., did communicate, receive, exhibit and display offers by

divers persons, to your Grand Jurors unknown, to buy and sell stocks and bonds of corporations and petroleum, cotton, grain, provisions, pork and other produce, on margins, without the intention of receiving and paying for such property so offered to be bought, or of delivering such property so offered to be sold; and did then and there communicate, receive, exhibit and display statements and quotations of the prices of such stocks and bonds and such petroleum, cotton, grain, provisions and other produce, with a view to such pretended purchase and sale as aforesaid, contrary, etc.

*Bates & May* for the respondent.

The crime consists not in keeping the shop but in conducting or permitting the prohibited business therein. The keeping must be accompanied with certain prohibited acts. The statute must describe and the pleader must set forth such illegal transactions "with reasonable particularity of time, place, and circumstances." *State* v. *Day*, 3 Vt. 138; *State* v. *Benjamin*, 49 Vt. 101; *State* v. *Higgins*, 53 Vt. 191; *State* v. *Clancy*, 56 Vt. 698; *State* v. *McCone*, 59 Vt. 117; I Arch. Cr. Pr. 285 and note; II Hawk. P. C. c. 25, § 57.

The indictment is silent as to who had the unlawful intention. *Com.* v. *Dean*, 110 Mass. 64.

The second count is framed upon V. S.. 5130. But that section has no force independently of 5128. It refers to the same transactions and the count thereon is bad for the same want of particularity which makes the first count defective. I Bish. Cr. Pro., (1 ed.) 547, 548; *Shannon* v. *People*, 5 Mich. 71; *State* v. *Ricker*, 29 Me. 84.

*W. H. Taylor*, State's Attorney, for the State.

The first count charges the offense in the language of the statute, which is sufficient. *Fortenbury* v. *State*, 47 Ark. 188; *State* v. *Casey*, 45 Me. 435.

A *pretended* buying and selling implies a lack of intention

to receive and pay for the subject of the sale.   *State* v. *Campbell,* 29 Tex. 44: 94 Am. Dec. 251.

It is unnecessary to allege the names of the persons with whom the pretended buying and selling is conducted. Clark's Crim. Proc. 161; Bish. St. Cr. §§ 892, 894, 895.

The second count also alleges an offense in the language of the statute.   The place where the acts prohibited in this section are performed is immaterial.

ROWELL, J.   This indictment, which is demurred to, contains two counts.   The first is based on section 5128 of the Vt. Sts., and the second, on section 5130.   These sections, with the others under the head of "Stock Gambling," were first passed in 1888, in an act to suppress "bucket-shops and gambling in stocks, bonds, petroleum, cotton, grain and provisions."   It was the intention of that act, as therein declared, to prevent, punish and prohibit within this State, the business engaged in and conducted in places commonly known and designated as bucket-shops, including the practice commonly known as bucket-shopping by persons, corporations, etc., who ostensibly carry on the business or occupation of commission merchants or brokers in grain, provisions, petroleum, stocks and bonds.   Although this declaration of intention is not contained in Vt. Sts., it may be considered in construing the sections in question.

Section 5128 provides that no person nor corporation shall keep nor cause to be kept a bucket-shop, office, store nor other place, in which is conducted or permitted the pretended buying or selling of stocks, bonds, etc., on margins or otherwise, without any intention of receiving and paying for the property so bought or of delivering the property so sold; nor in which is conducted or permitted the pretended buying or selling of such property on margins; nor when the party buying or offering to buy such property does not intend actually to receive the same if bought or to deliver it if sold.

The first count alleges that the prisoner kept and caused

to be kept "a bucket-shop, to wit, an office, in which said bucket-shop, to wit, said office, was then and there conducted and permitted the pretended buying and selling of stocks, bonds," etc., following the words of the statute. This does not, directly at all events, charge the prisoner with conducting nor permitting the business that made said office a bucket-shop. If it charges him with it at all, it is only by inference and argument, which is not enough. For aught that can properly be gathered from the count, the business may have been conducted and carried on there by others without the permission or even the knowledge of the prisoner. The offense created by this section is the keeping of a bucket-shop, and that is what the prisoner is charged with; but in order to be guilty of that offense, he must in some assignable way have conducted or permitted the business that made the place a bucket-shop. The precedents for keeping gaming houses are instructive. After alleging the keeping of the house, they directly connect the prisoner with the business carried on therein that makes the place a gaming house, by alleging that he caused and permitted divers persons to frequent and come together there to game, and to be and remain there for that purpose, and that he procured, permitted and suffered them there to game and play together. III Chit. Crim. Law 673 and following. The first count, therefore, is bad for the reason stated, which makes it unnecessary to consider the other objections made to it.

Section 5130 provides that it shall not be necessary in order to commit the offense defined in § 5128, that both the buyer and the seller agree to do any of the acts therein prohibited, but that the offense shall be complete against a person or corporation thus pretending or offering to sell or to buy, whether the offer is accepted or not; and that a person or corporation communicating, receiving, exhibiting, or displaying in any manner such offer so to buy or to sell, or any statements or quotations of the prices of such property,

with a view to such transaction, shall be deemed an accessory, and punished as provided in case of one who violates § 5128.

It is upon the last part of § 5130 that the second count is based. But that section does not create a substantive offense, independent of the offense created by § 5128, which is the keeping of a bucket-shop, but creates one that is accessory to it, as the section declares; and the things prohibited by the section, in order to constitute an offense under it, must be done with a view to transactions mentioned in § 5128, namely, to transactions in a place the keeping of which is there prohibited. This count makes no allegation that the things complained of were done with a view to transactions in such a place, and is therefore bad.

> *Judgment reversed, demurrer sustained, indictment adjudged insufficient and quashed, and the prisoner discharged.*